1  Toby J. Marshall, WSBA #32726
   Erika L. Nusser, WSBA #40854
2  Attorneys for Plaintiffs and the Class
   TERRELL MARSHALL LAW GROUP PLLC
3  936 North 34th Street, Suite 300
   Seattle, Washington 98103
4  Telephone: (206) 816-6603
   Email: tmarshall@terrellmarshall.com
5  Email: enusser@terrellmarshall.com

6  [Additional Counsel Appear on Signature Page]

7              UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF WASHINGTON
8

   GREGG FREITAS and RYAN          NO.
9  CALVERT, individually and on behalf
   of all others similarly situated,   **CLASS AND COLLECTIVE
10                                      ACTION COMPLAINT**
                      Plaintiffs,
11                                      **JURY TRIAL DEMANDED**
          vs.
12
   HEARTLAND EXPRESS, INC. OF
13 IOWA,

14                    Defendant.

15      Plaintiffs Gregg Freitas and Ryan Calvert, by and through their undersigned

16 attorneys, hereby bring this Class and Collective Action Complaint against

17 Defendant Heartland Express, Inc. and allege as follows:

18                       **I.  NATURE OF THE CASE**

19      1.      This is a class and collective action on behalf of Plaintiffs and other

20 similarly situated individuals who have worked for Interstate Distributor, Inc. or

CLASS AND COLLECTIVE ACTION COMPLAINT - 1

Heartland Express, Inc. of Iowa (referred to herein collectively as "Defendant")[1] as over-the-road truck drivers in California, Washington, and nationwide.

2.      Plaintiffs bring this case to address Defendant's systemic denial of minimum wage and compliant meal and rest periods, among other violations. Plaintiffs state claims under the Fair Labor Standards Act (FLSA); Revised Code of Washington (RCW); Washington Administrative Code (WAC); California Unfair Competition Law (UCL); California Labor Code; and California Department of Industrial Relations, Industrial Welfare Commission (IWC) wage orders.

3.      Defendant has employed Plaintiffs and thousands of other similarly situated employees nationwide, who are collectively referred to here as Drivers. Defendant has also employed Plaintiff Calvert and hundreds of the Drivers in California and Plaintiff Freitas and hundreds of the Drivers in Washington as over-the-road truck drivers.  Defendant's Drivers work away from home for weeks on end on tours of duty hauling freight in long-haul semis, either alone, or as part of a two-driver team.  They live on the truck and attempt to rest in the truck's cramped

---

[1] Heartland Express, Inc. of Iowa wholly acquired Interstate Distributor, Inc. in July 2017.

1    "sleeper berth," a small bunk in the truck's cab—often while the truck is in motion

2    and being driven by a coworker.

3        4.    The Drivers work day and night transporting loads long distances,

4    often more than a thousand miles. They spend weeks away from home as part of

5    their regular job duties. To maximize productivity and profits, Defendant works to

6    keep the trucks moving as much as possible. The more Defendant maximizes its

7    Drivers' work hours, the more loads its trucks can transport in a shorter amount of

8    time. Not surprisingly, the Department of Transportation (DOT) has observed that

9    over-the-road truck drivers like Defendant's "work some of the longest hours

10   known in this country." *See* Notice of Proposed Rulemaking; Request for

11   Comments, Department of Transportation, Federal Motor Carrier Safety

12   Administration, Hours of Service of Drivers; Driver Rest and Sleep for Safe

13   Operations, 2000 WL 517560, 65 FR 25540-01, at 25548.

14       5.    During their tours of duty, Drivers must be logged into the truck's

15   electronic system under one of four duty statuses: "driving," "on-duty not driving,"

16   "off duty," or "sleeper berth." Each of these duty statuses corresponds to a specific

17   DOT definition. Defendant's policy and practice is to pay only for time spent

18   driving.  Defendant does not pay Drivers for time logged as "sleeper berth."

19       6.    Defendant's "sleeper berth" policies result in two categories of

20   violations: (1) unpaid wages for time during which Drivers are confined to the

CLASS AND COLLECTIVE ACTION COMPLAINT - 3

"sleeper berth" and the immediate vicinity of the truck while subject to the control of Defendant and unable to use the time effectively for their own purposes; and (2) noncompliant meal and rest periods during time when Drivers are constrained to the "sleeper berth" and the immediate area surrounding the truck while subject to the control of Defendant.

7.    <u>Unpaid Sleeper Berth Time</u>: The DOT's "hours of service" safety regulations require Drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" or "sleeper berth" before driving again. By having the Drivers attempt to rest in the truck's cramped "sleeper berth" for the mandatory 10-hour non-driving periods, Defendant can have the truck move as continuously as possible while still complying with the DOT's "hours of service" safety regulations.

8.    For example, many of Defendant's Drivers, including Plaintiff Freitas, have worked in a "team" configuration whereby one team member drives while the other attempts to rest in the small "sleeper berth." By having the Drivers switch off in the "team configuration," Defendant can have the truck move continuously, without stopping for 10 hours.  In turn, the team configuration maximizes efficiency for Defendant by enabling it to meet the tight delivery deadlines it promises to its customers.  The Drivers cannot, of course, get out and do what they want during this time; Drivers are required to be on the employer's premises at a

1   prescribed workplace (the truck) and are subject to Defendant's control, unable to

2   use the time effectively for their own purposes.

3        9.     When the Drivers work in a solo capacity and stop the truck for the

4   mandatory 10-hour non-driving periods, they are still confined to the immediate

5   area of the truck.  Drivers are thus required to be on the employer's premises—the

6   sleeper berth—as no other adequate facilities are provided.  Furthermore, Drivers

7   are interrupted by Defendant to such an extent that they cannot get even 5 hours of

8   sleep during such periods.  Finally, Drivers are subject to Defendant's control and

9   unable to use the time effectively for their own purposes.

10       10.    In addition, the Drivers are responsible for the security of the loads

11  they are transporting, even during the 10-hour non-driving periods.

12       11.    Whether the truck is moving or stationary, the time the Drivers spend

13  in the sleeper berth, passenger seat, or elsewhere in the truck and immediate

14  vicinity surrounding is subject to the control of Defendant.  That time is also

15  primarily for Defendant's benefit because it lets Drivers resume hauling freight for

16  Defendant as early as possible.  This in turn allows the trucks to move as

17  efficiently as possible and maximizes the amount of freight Defendant can deliver

18  to its customers in the shortest period.

19       12.    Defendant leaves it up to the Drivers to get whatever rest they can

20  muster in the course of meeting demanding delivery schedules and obligations, all

1  the while moving as quickly as possible without running afoul of DOT "hours of

2  service" regulations.

3      13.    This time during which the Drivers are on tours of duty and confined

4  to the sleeper berth and the immediate area surrounding it, subject to the control of

5  Defendant, is compensable under Washington law and California law.

6      14.    Under Washington law, any time during which an employee is

7  authorized or required by the employer to be on duty on the employer's premises

8  or at a prescribed workplace is "hours worked" and compensable.  *See* WAC 296-

9  126-002(8). The Drivers are on tours of duty for weeks at a time when they

10  transport freight for Defendant and are required to remain in or around the

11  immediate area of the sleeper berth during their 10-hour, DOT-mandated non-

12  driving periods.

13      15.    Similarly, under California law, time during which employees are

14  subject to the control of the employer and are unable to use the time effectively for

15  their own purposes is compensable.  *See Morrillion v. Royal Packing Co.*, 22 Cal.

16  4th 575, 582 (2000).  Indeed, "an employee who is subject to an employer's

17  control does not have to be working during that time to be compensated." *Id*. The

18  Drivers are subject to Defendant's control during their 10-hour non-driving periods

19  in the sleeper berth because they are required to remain in or around the immediate

20  area of the sleeper berth, are unable to use the time effectively for their own

1    purposes, and are in the sleeper berth for the benefit of Defendant.

2        16.    In addition, under federal law, time spent by truck drivers on tours of

3    duty in the "sleeper berth" beyond a normal, 8-hour sleeping period is

4    compensable. Under DOL regulations interpreting the FLSA, truck drivers on tours

5    of duty, like the Drivers in this case, are entitled to compensation for any time

6    logged as "sleeper berth" in excess of 8 hours per day. *See, e.g., Julian v. Swift*

7    *Transportation Co. Inc.*, 360 F. Supp. 3d 932, 952 (D. Ariz. 2018) (citing 29

8    C.F.R. § 785.22, and holding that truck drivers on tours of duty are entitled to at

9    least minimum wage for time logged as "sleeper berth" in excess of 8 hours per

10   day).

11       17.    Under the same DOL regulations, the entire 8-hour sleeping period

12   also must be paid unless it is: (1) regularly scheduled, (2) sufficiently uninterrupted

13   to allow employees a reasonable night's sleep, and (3) unpaid subject to a valid

14   agreement between the employee and the employer. *See* 29 C.F.R. § 785.22.

15   Defendant has failed to satisfy any one of these three necessary requirements.

16   Defendant does not regularly schedule any sleeping period; rather, Defendant

17   leaves it to the Drivers to take their mandatory non-driving periods when the

18   circumstances of the load transport and the DOT hours of service regulations

19   permit it. As discussed herein, Defendant fails to ensure that the non-driving

20   periods will sufficiently allow for even five hours of uninterrupted sleep. Nor does

Defendant obtain any valid agreements with its Drivers to exclude even an 8-hour

sleeping period from pay, much less the full 10-hour non-driving period.

18.    <u>Noncompliant Meal and Rest Breaks</u>: Defendant fails to provide its

Drivers with timely and compliant off-duty meal and rest periods during the time

they are in the sleeper berth.

19.    Defendant equates breaks to "off duty" or "sleeper berth" as defined

by the DOT, rather than applicable wage and hour law.  Thus, when the drivers are

logged as "off duty" or "sleeper berth" for DOT safety purposes, they are not

provided with an off-duty meal break because they still are under Defendant's

control. By definition, meal periods cannot be "off duty" or compliant under

California law if the employee's movement is constrained. Similarly, meal periods

are not compliant under Washington law if the employee is on the premises in the

interest of the employer.  Of course, the Drivers' movement is constrained while

they are confined to the small sleeper berth—particularly when the truck is

moving. The Drivers' movement also is constrained even when the trucks are

stationary because they are required to be nearby and responsible for the load

throughout their tours of duty.

20.    Further, the California Labor Code requires that employers provide

one meal period *by the end of the fifth hour of work* and *another by the end of the*

*tenth hour of work.* Cal. Labor Code §§ 226.7 and 512; and Cal. Code Regs., Title 8 § 11090 ¶¶ 7 & 11.

21.    Similarly, the WAC requires that *no employee shall be required to work more than five consecutive hours without a meal period* and that employees are entitled to a *second meal period* prior to or during any three-or-more hour period of work beyond a normal eight-hour workday. Wash. Admin. Code 296-126-092. Employers have a "mandatory obligation" to both "provide" meal breaks and "ensure" the breaks comply with the law. *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507, 519, 415 P.3d 224 (2018); *Brady v. AutoZone Stores, Inc.*, 188 Wn.2d 576, 584, 397 P.3d 120 (2017).

22.    Defendant's Drivers routinely spend 10 or more hours in the sleeper berth at a time without being provided with any meal period.

23.    Defendant also does nothing to authorize, permit, or provide rest periods that comply with the RCW, WAC, California Labor Code, or IWC wage orders.

24.    The California Labor Code requires that employees be completely relieved of duty and not subject to interruption for at least ten minutes for every four hours of work or major fraction thereof. Cal. Labor Code §§ 226.7 and Cal. Code Regs., Title 8 § 11090 ¶ 12.

1    25.    Similarly, the WAC requires that employees shall be allowed a rest

2    period of not less than ten minutes, on the employer's time, for each four hours of

3    working time. Rest periods shall be scheduled as near as possible to the midpoint

4    of the work period. No employee shall be required to work more than three hours

5    without a rest period. Wash. Admin. Code § 296-126-092.  Rest breaks may not be

6    waived by employees. *See Pellino v. Brink's Inc.*, 164 Wn. App. 668, 688, 267

7    P.3d 383 (2011).  Employers have a "mandatory obligation" to both "provide" rest

8    breaks and "ensure" the breaks comply with the law. *Chavez*, 190 Wn.2d at 519.

9    26.    Defendant does not provide the Drivers with any rest periods during

10   the 10 or more hours they must spend in the sleeper berth and the immediate

11   vicinity of the truck on a daily basis. Even if Drivers manage to take some kind of

12   "break" from time to time, these "breaks" are not free from physical constraint

13   while in the sleeper berth or while tethered to the immediate vicinity of the truck,

14   and the drivers are on the premises or at a prescribed workplace in the interest of

15   their employer.

16   27.    Plaintiffs Ryan Calvert and Gregg Freitas bring Cause of Action One

17   (the "FLSA Claim") as a collective action on behalf of themselves and other

18   similarly situated individuals who have worked as over-the-road truck drivers for

19   Defendant in the United States at any time beginning three years before the filing

20   of this Complaint through the opt-in deadline.

CLASS AND COLLECTIVE ACTION COMPLAINT - 10

28.    Plaintiff Gregg Freitas brings Causes of Action Two through Seven ("the Washington Class Claims") as a class action on behalf of himself and other similarly situated individuals who have worked as over-the-road truck drivers for Defendant while residing in Washington at any time beginning four years before the filing of this Complaint through resolution of the action.

29.    Plaintiff Ryan Calvert brings Causes of Action Eight through Fourteen ("the California Class Claims") as a class action on behalf of himself and other similarly situated individuals who have worked as over-the-road truck drivers for Defendant in California at any time beginning four years before the filing of this Complaint, through resolution of this action.

30.    Plaintiffs Ryan Calvert and Gregg Freitas, on behalf of themselves and on behalf of all members of the Collective, bring this action under FLSA Sections 201, *et seq*.

31.    Plaintiff Gregg Freitas, on behalf of himself and on behalf of all members of the Washington Class, brings this action under RCW Sections 49.12.020, 49.12.050, 49.46.020, 49.46.090, 49.48.010, 49.48.030, 49.52.050, 49.52.070, and 19.86.090; and WAC Sections 296-126-023 and 296-126-092. Plaintiff challenges Defendant's policies of (1) failing to pay Plaintiff and the Class members minimum wage; (2) denying Plaintiff and the Class full compensation for all hours worked; (3) failing to provide, authorize, permit, or

1    make available meal and rest periods to Plaintiff and Class members as required by

2    Washington law; (4) failure to timely pay Plaintiff and Class members full wages

3    upon termination or resignation; and (5) unfair or deceptive acts or practices.

4    Plaintiff seeks compensation, damages, exemplary damages, and interest to the full

5    extent permitted by the Revised Code of Washington, and Washington

6    Administrative Code.

7         32.    Plaintiff Ryan Calvert, on behalf of himself and on behalf of all

8    members of the California Class, brings this action under California Labor Code

9    Sections 201-203, 226.2, 226.3, 226.7, 226.8, 400-410, 510, 512, 1182, 1174,

10   1194, 1197, and 1197.1; and California Code of Regulations, Title 8, Section

11   11090, Paragraphs 7 & 11-12 (Wage Order No. 9). Plaintiff challenges

12   Defendant's policies of (1) failing to pay Plaintiffs and proposed Class members

13   minimum wage; (2) denying Plaintiff and the Class full compensation for all hours

14   worked; (3) failing to provide, authorize, permit or make available meal and rest

15   periods to Plaintiff and the Class as required by California law; (4) failing to timely

16   pay Plaintiff and the Class full wages upon termination or resignation; and (5)

17   failing to provide Plaintiff and the Class with accurate, itemized wage statements.

18   Plaintiff seeks compensation, damages, penalties, and interest to the full extent

19   permitted by the California Labor Code and the applicable IWC wage orders.

20

## II.  JURISDICTION AND VENUE

33.     The FLSA authorizes private rights of action to recover damages for violation of the FLSA's wage and hour provisions.  29 U.S.C. § 216(b).  This Court has original federal question jurisdiction under 28 U.S.C. Section 1331.

34.     This Court has supplemental jurisdiction over the California and Washington claims because they are so related to this action that they form part of the same case or controversy under Article III of the United States Constitution.

35.     Additionally, jurisdiction over Plaintiffs' state law claims is based on the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A), because the aggregated claims of the individual class members of each of the classes exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Washington and California Classes, on the one hand, and Defendant, on the other, are citizens of different states.

36.     Venue is proper in this Court under 28 U.S.C. Section 1391(b) because Defendant conducts business and can be found in this judicial district, many of the causes of action set forth herein have arisen and occurred in part in this judicial district, and Plaintiff Freitas is a resident of this judicial district.

1

### III.  PARTIES

2       37.     Plaintiff Ryan Calvert is, and has been a resident of Apple Valley,

3   California during the relevant time period.  Plaintiff worked as over-the-road truck

4   driver for Defendant from approximately March 2016 to March 2017.

5       38.     Plaintiff Gregg Freitas is and has been a resident of Spokane Valley,

6   Washington during the relevant time period.  Plaintiff worked as an over-the-road

7   truck driver for Defendant while residing in Washington from approximately May

8   2015 to approximately July 2017.

9       39.     The entity Interstate Distributor, Inc. hired Plaintiffs.  Interstate was a

10  corporation that did business in the states of California and Washington, and

11  nationwide, and at all relevant times was engaged in the business of long-haul

12  trucking in California, Washington, and nationwide, including in this judicial

13  district, until July 2017.

14      40.     Defendant Heartland Express, Inc. of Iowa is a corporation that does

15  business in the states of California and Washington, and nationwide, and at all

16  relevant times has been engaged in the business of long-haul trucking in California,

17  Washington, and nationwide, including in this judicial district. Defendant

18  Heartland is headquartered in North Liberty, Iowa. Defendant Heartland wholly

19  acquired Interstate in July 2017.

20

CLASS AND COLLECTIVE ACTION COMPLAINT - 14

41.     Throughout this Complaint, any reference to "Defendant" is intended to refer to both Interstate and Heartland jointly.

42.     At all relevant times, Defendant has done business under the laws of Washington, has had places of business in Washington, and has employed Class members in this judicial district.  Defendant is an "employer" as that term is used in the Revised Code of Washington.

## IV.  FACTUAL ALLEGATIONS

43.     Interstate was a former truckload motor shipping carrier that operated approximately 1,350 company tractors and 4,700 trailers.  Heartland acquired 100% of Interstate in July 2017. Heartland is a truckload motor shipping carrier that operates approximately 4,000 trucks.

44.     Interstate employed Plaintiffs and hundreds of other over-the-road truck drivers in California and Washington and thousands nationwide.  Heartland continues to employ hundreds of over-the-road truck drivers in California and Washington and thousands nationwide.  The Drivers work away from home for weeks on end driving long-haul trucks, either alone, or as part of a two-driver team.  They spend their time hauling freight for Heartland's customers, conducting pre- and post-trip inspections, fueling the tractors, completing paperwork, conducting business with delivery agents, guarding the load, and otherwise remaining tethered to the truck.

45.     During their tours of duty transporting freight for Heartland, Drivers live on the truck and attempt to rest in the truck's cramped "sleeper berth." The sleeper berth is a small space with a bunk bed in the truck's cab.  Drivers are frequently interrupted by work tasks, road conditions, the motion of the truck, and noise to such an extent that they cannot get even 5 hours of sleep during such periods.

46.     The Drivers work day and night transporting loads long distances, often more than a thousand miles, while hauling freight either as part of a two-driver team or as a solo driver. They spend weeks away from home at a time as part of their job.

47.     For example, Plaintiff Gregg Freitas worked in a two-driver team that collectively hauled freight for 20 or more hours a day.  He managed only a few hours of sleep each night in the truck's cramped "sleeper berth," typically while the truck was in motion and being driven by a team member.  While in the sleeper berth, Plaintiff Freitas was frequently interrupted by dispatchers requesting status updates on his trips.  In addition, Mr. Freitas routinely had to complete paperwork and assist the other team driver while logged as "sleeper berth." The sleeper berth of a moving truck was not an adequate place for Plaintiff Freitas or the other Drivers to get at least 5 hours of uninterrupted sleep.

48.    As solo drivers, Plaintiffs Ryan Calvert and Gregg Freitas continued to work around the clock hauling freight, performing various non-driving tasks (such as trip inspections, completing paperwork, working with delivery agents, and fueling, among numerous other tasks), and remaining responsible for the security of the load while confined to the truck's sleeper berth and the immediate area surrounding it, even when the truck was stopped.

49.    Drivers are regularly interrupted to attend to work tasks during their "sleeper berth" time. For example, Plaintiff Freitas' "sleeper berth" time was regularly interrupted by dispatchers requesting status updates and requests by Defendant to complete paperwork.  Interruptions were so frequent for Mr. Freitas that he could not get even 5 hours of sleep during his DOT-mandated 10-hour non-driving periods.

50.    Between the 20 or more hours per day spent driving, riding in a moving truck, performing non-driving tasks, and remaining confined to the truck's sleeper berth while subject to Defendant's control and for Defendant's benefit, Plaintiffs and other similarly situated Drivers have regularly worked more than 150 hours per week.

51.    The Drivers' time is logged in the truck's electronic system during each hour, or fraction thereof, of every 24-hour period as one of the following status: "driving," "on-duty, not driving," "off-duty," or "sleeper berth."

52.    Heartland's policy and practice is to pay only for time spent driving and to not pay Drivers for any time logged as "sleeper berth" even though the Drivers are required to remain tethered to the truck's cramped sleeper berth.

53.    Defendant's "sleeper berth" policies result in two categories of violations: (1) unpaid wages for time during which Drivers are confined to the "sleeper berth," passenger seat, and the immediate area surrounding the truck while subject to the control of Defendant and unable to use the time effectively for their own purposes; and (2) noncompliant meal and rest periods during time when Drivers are confined to the "sleeper berth," passenger seat, and the immediate area surrounding the truck while subject to the control of Defendant.

54.    <u>Unpaid Sleeper Berth Time</u>: The DOT's "hours of service" safety regulations require drivers who have already been driving for 11 hours to log 10 consecutive hours as "off duty" or "sleeper berth" before driving again. By having the Drivers attempt to rest in the truck's cramped "sleeper berth" for the mandatory 10-hour non-driving periods, Defendant can have the truck move as continuously as possible while still complying with the DOT's "hours of service" safety regulations.

55.    For example, many of Defendant's Drivers, including Plaintiff Freitas, have worked in a "team" configuration whereby one team member drives while the other attempts to rest in the small "sleeper berth." By having the Drivers switch off

in the "team configuration," Defendant can have the truck move continuously, without stopping for 10 hours when one team member must take her or his DOT-mandated 10-hour non-driving period.  In turn, the team configuration maximizes efficiency for Defendant by enabling it to meet the tight delivery deadlines it promises to its customers.  The Drivers cannot, of course, get out and do what they want during this time; Drivers are required to be on the employer's premises at a prescribed workplace (the truck), and are subject to Defendant's control, unable to use the time effectively for their own purposes.

56.    When the Drivers work in a solo capacity and stop the truck for the mandatory 10-hour non-driving periods, they are still confined to the immediate area of the truck; Drivers are required to be on the employer's premises—the sleeper berth—as no other adequate facilities are provided.  Furthermore, Drivers are interrupted by Defendant to such an extent that they cannot get even 5 hours of sleep during such periods.  While in the sleeper berth, Drivers are subject to Defendant's control, are in the sleeper berth for Defendant's benefit, and are unable to use the time effectively for their own purposes.

57.    The Drivers are responsible for the security of the loads they are transporting, even during the 10-hour non-driving periods.

58.    Whether the truck is moving or stationary, the time the Drivers spend in the sleeper berth is subject to the control of Defendant.  It is also primarily for

1    Defendant's benefit because it lets Drivers resume hauling freight for Defendant at

2    the earliest possible time.  This in turn allows the trucks to move as efficiently as

3    possible and maximizes the amount of freight Defendant can deliver to its

4    customers in the shortest amount of time.

5        59.    As a result of these policies, Heartland has failed to compensate

6    Plaintiffs and its other Drivers for all hours worked.  Given the time spent driving,

7    the time spent performing various non-driving tasks, and the time spent confined to

8    the sleeper berth and immediate vicinity thereof, all while subject to the control of

9    Defendant, Plaintiffs and the Drivers have regularly worked so many hours without

10    compensation that their effective hourly rates dip below the Federal, California and

11    Washington minimum wages.  Indeed, Plaintiffs and other Drivers have often

12    worked 100 or more hours per week.

13        60.    Noncompliant Meal and Rest Breaks: Defendant fails to provide

14    Drivers with timely and compliant off-duty meal and rest periods when they are in

15    the sleeper berth.

16        61.    Defendant does not have policies and procedures in place to provide

17    the Drivers with compliant meal periods during which they are completely

18    removed from duty for at least 30 minutes by the end of the fifth and tenth hour of

19    work.  Even when the Drivers are logged as "sleeper berth" for DOT purposes,

20    they are still are under Defendant's control.

1    62.    Defendant fails to provide Drivers with periods of at least 10 minutes

2    for every four hours of work.  Even if Drivers manage to take some kind of

3    "break" from time to time, these "breaks" are not free from physical constraint

4    while in the sleeper berth or passenger seat on a moving truck or constrained to the

5    immediate vicinity of the truck when it is stopped.

6    **V.  COLLECTIVE AND CLASS ACTION ALLEGATIONS**

7    63.    Plaintiffs brings the First Cause of Action (the FLSA claim) as an

8    "opt-in" collective action under 29 U.S.C. Section 216(b) on behalf of themselves

9    and a proposed collection of similarly situated employees.  The FLSA Collective is

10    defined as:

11    > All individuals who are currently employed, or formerly
12    > have been employed as over-the-road truck driver for
     > Interstate Distributor Co. and/or Heartland Express, Inc. in
     > the United States at any time beginning three years before
13    > the filing of this Complaint.

14    64.    Plaintiffs Ryan Calvert and Gregg Freitas, individually and on behalf

15    of other similarly situated employees defined above, seek relief on a collective

16    basis challenging Heartland's (and previously Interstate Distributor's) policy and

17    practice of failing to properly pay over-the-road truck drivers minimum wages at

18    the statutorily-mandated rate.  The number and identity of other similarly situated

19    persons yet to opt-in and consent to be party-plaintiffs may be determined from the

20

1    records of Interstate and Heartland, and potential opt-ins may be easily and quickly

2    notified of the pendency of this action.

3        65.    Plaintiffs Ryan Calvert and Gregg Freitas have consented to be party

4    plaintiffs by executing a "consent to join" form, which Plaintiffs are filing

5    concurrently with this Complaint. The executed forms are attached hereto as

6    Exhibits A & B.

7        66.    Plaintiff Gregg Freitas brings the Second through the Sixth Causes of

8    Action (the Washington Class Claims) as an "opt-out" class action under Federal

9    Rule of Civil Procedure 23.   The Washington Class is defined as:

10
11           All current and former employees of Interstate Distributor
             Co. or Heartland Express, Inc. who drove as over-the-road
             truck drivers while residents of Washington, at any time
12           beginning four years before the filing of this Complaint.

13
14       67.    This action has been brought and may properly be maintained as a

     class action under Federal Rule of Civil Procedure 23:

15
16           i.    *Numerosity*.  Defendant has employed hundreds of over-the-road

                    truck drivers in Washington from 2015 through the present.  These
17
                    drivers are geographically dispersed and unlikely to have the
18
                    resources necessary to pursue individual claims.  Washington Class
19
                    members are therefore far too numerous to be individually joined in
20
                    this lawsuit.

CLASS AND COLLECTIVE ACTION COMPLAINT - 22

1          ii.    *Existence and Predominance of Questions of Law and Fact*.

2    Common questions of law and fact exist as to the members of the

3    Washington Class, and common questions of law and fact

4    predominate over questions affecting only individual members of the

5    Washington Class.  The common questions include the following:

6            i.   Whether Defendant has suffered or permitted Drivers to

7                  work during the non-driving periods logged as sleeper berth;

8            ii.  Whether Defendant authorized or required Drivers to be on

9                  duty on the employer's premises or at a prescribed

10                 workplace during the non-driving periods logged as sleeper

11                 berth;

12           iii.  Whether Defendant owes the Drivers minimum wages;

13           iv.  Whether Defendant owes the Drivers straight-time wages;

14           v.  Whether Defendant failed to provide Plaintiff Freitas and

15                 Washington Class members with the meal periods to which

16                 they were entitled under Washington law and ensure those

17                 breaks were taken;

18           vi.  Whether Defendant failed to provide Plaintiff Freitas and

19                 Washington Class members with the rest breaks to which

20

1    they were entitled under Washington law and ensure those

2    breaks were taken;

3    vii.    Whether Defendant failed to compensate Plaintiff Freitas

4    and Washington Class members for missed meal and rest

5    breaks;

6    viii.    Whether Defendant's policy and practice of failing to pay

7    Plaintiff Freitas and Washington Class members all wages

8    due upon the end of their employment violated Washington

9    law;

10    ix.    Whether Defendant's actions were "willful" as that term is

11    understood in Washington wage and hour law;

12    x.    Whether Defendant engaged in unfair or deceptive acts or

13    practices in relation to Plaintiff Freitas and Washington

14    Class members;

15    xi.    Whether Defendant's unfair or deceptive acts or practices

16    occurred in trade or commerce;

17    xii.    Whether Defendant's unfair or deceptive acts or practices

18    are injurious to the public interest under RCW 19.86.093;

19    xiii.    Whether Defendant's unfair or deceptive acts or practices

20    injured Plaintiff Freitas and Washington Class members;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

xiv.    Whether Defendant's policies and practices have resulted in violation of one or more of the RCW or WAC provisions cited herein;

xv.    The relief to which Plaintiff Freitas and the Class may be entitled as a result of the violations alleged herein.

iii.    *Typicality*.  Plaintiff Freitas's claims are typical of the claims of the Washington Class.  Defendant's common course of conduct in denying the Drivers compensation for time spent in the truck's sleeper berth and failure to provide meal and rest periods in compliance with Washington law has caused Plaintiff and the proposed Washington Class to sustain the same or similar injuries and damages.  Plaintiff Freitas's claims are thereby representative of and co-extensive with the claims of the proposed Washington Class.

iv.    *Adequacy*. Plaintiff Freitas is an adequate representative of the Washington Class because he is a member of the Washington Class and his interests do not conflict with the interests of the members of the Class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff and his

1    counsel will fairly and adequately protect the interests of members of

2    the Washington Class.

3          v.    *Superiority*.  The class action is superior to other available means for

4    the fair and efficient adjudication of this dispute.  The injury suffered

5    by each member of the Washington Class, while meaningful on an

6    individual basis, is not of such magnitude as to make the prosecution

7    of individual actions against Defendant economically feasible.

8    Furthermore, individualized litigation increases the delay and expense

9    to all parties and the court system presented by the legal and factual

10    issues of the case.  In contrast, the class action device presents far

11    fewer management difficulties and provides the benefits of single

12    adjudication, economy of scale, and comprehensive supervision by a

13    single court, and avoids the problem of inconsistent judgments.

14        68.    Plaintiff Ryan Calvert brings the Seventh through Fourteenth Causes

15 of Action (the California Class Claims) as an "opt-out" class action under Federal

16 Rule of Civil Procedure 23.  The California Class is defined as:

17       All current and former employees of Interstate Distributor
      Co. or Heartland Express, Inc. who drove as over-the-road

18       truck drivers in California and/or while residents of
      California, at any time beginning four years before the

19       filing of this Complaint.

20

69.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23:

    i.     *Numerosity*.  Defendant has employed hundreds of over-the-road truck drivers in California from 2015 through the present.  These drivers are geographically dispersed throughout the state and unlikely to have the resources necessary to pursue individual claims.  California Class members are therefore far too numerous to be individually joined in this lawsuit.

    ii.     *Existence and Predominance of Questions of Law and Fact*.  Common questions of law and fact exist as to the members of the California Class, and common questions of law and fact predominate over questions affecting only individual members of the California Class.  The common questions include the following:

        i.     Whether Defendant has suffered or permitted Drivers to work during the non-driving periods logged as sleeper berth;

        ii.     Whether Defendant authorized or required Drivers to be on duty on the employer's premises or at a prescribed workplace during the non-driving periods logged as sleeper berth;

iii.    Whether Drivers are subject to Defendant's control during

their 10 or more hour non-driving periods;

iv.    Whether Drivers are subject to Defendant's control during

the time they must spend in the trucks' sleeper berths;

v.    Whether Defendant owes the Drivers minimum wages;

vi.    Whether Defendant owes the Drivers straight-time wages;

vii.    Whether Defendant has failed to provide the Drivers an

opportunity to take off-duty meal periods as required by

applicable law;

viii.    Whether Defendant has failed to authorize and permit rest

periods as required by applicable law;

ix.    Whether the paychecks provided to the Drivers in

connection with their compensation contain all the elements

mandated for accurate itemized wage statements under

California Labor Code Section 226(a);

x.    Whether Drivers who had their employment relationship

with Defendant terminated are entitled to penalty wages for

Defendant's failure to timely pay all outstanding amounts of

compensation owed upon termination of the employment

relationship;

xi.    Whether Defendant's policies and practices have resulted in violation of one or more of the California Labor Code Provisions cited herein;

xii.    Whether Defendant's policies and practices are unlawful unfair business practices in violation of California Business & Professions Code Sections 17200, *et seq*.; and

xiii.    The monetary relief to which Plaintiff Calvert and the Class may be entitled as a result of the violations alleged herein.

iii.    *Typicality*.  Plaintiff Calvert's claims are typical of the claims of the California Class.  Defendant's common course of conduct in denying the Drivers compensation for time logged as "sleeper berth" and failure to provide legally compliant meal and rest periods in the sleeper berth has caused Plaintiff and the proposed California Class to sustain the same or similar injuries and damages.  Plaintiff's claims are thereby representative of and co-extensive with the claims of the proposed California Class.

iv.    *Adequacy*. Plaintiff Calvert is an adequate representative of the California Class because he is a member of the California Class and his interests do not conflict with the interests of the members of the Class he seeks to represent.  Plaintiff has retained counsel competent

1   and experienced in complex class action litigation, and Plaintiff

2   intends to prosecute this action vigorously.  Plaintiff and his counsel

3   will fairly and adequately protect the interests of members of the

4   California Class.

5   v.   *Superiority*.  The class action is superior to other available means for

6   the fair and efficient adjudication of this dispute.  The injury suffered

7   by each member of the California Class, while meaningful on an

8   individual basis, is not of such magnitude as to make the prosecution

9   of individual actions against Defendant economically feasible.

10  Furthermore, individualized litigation increases the delay and expense

11  to all parties and the court system presented by the legal and factual

12  issues of the case.  In contrast, the class action device presents far

13  fewer management difficulties and provides the benefits of single

14  adjudication, economy of scale, and comprehensive supervision by a

15  single court, and avoids the problem of inconsistent judgments.

16  **VI.  CAUSES OF ACTION**

17  **FIRST CAUSE OF ACTION**
    **Violations of the Fair Labor Standards Act**

18  **29 U.S.C. §§ 201, *et seq.***
    **(FLSA Collective)**

19  70.   Plaintiffs, on behalf of themselves and all others similarly situated,

20  reallege as if fully set forth, each and every allegation set forth herein.

CLASS AND COLLECTIVE ACTION COMPLAINT - 30

71.     At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. Sections 201, *et seq.*

72.     The FLSA requires, among other things, that employers whose employees are engaged in interstate commerce, engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce pay employees at a rate not less than $7.25 per hour.  29 U.S.C. § 206(a)(1).  Defendant is subject to the requirements of the FLSA because it is engaged in interstate commerce and its employees are engaged in commerce.

73.     Defendant violated the FLSA by failing to pay its Drivers at a rate of at least $7.25 per hour in a given work week.  29 U.S.C. § 206(a)(1).

74.     Plaintiffs and all similarly situated employees are victims of a uniform and company-wide compensation policy of not paying for any time logged as "sleeper berth."  When the unpaid "sleeper berth" time is factored into the Drivers' hours worked, their regular rates of pay dip below the federal minimum wage rate of $7.25 per hour. This uniform policy, in violation of the FLSA, has been applied to all over the road truck Drivers employed by Defendant throughout California and the United States.

1    75.    Defendant has also violated the FLSA by failing to keep required,

2    accurate records of all hours worked by its over-the-road truck Drivers.  29 U.S.C.

3    § 211(c).

4    76.    Plaintiffs and all similarly situated employees are entitled to damages

5    equal to the mandated pay within the three years preceding the filing of this

6    Complaint, plus periods of equitable tolling, because Defendant acted willfully or

7    knew or showed reckless disregard of whether its conduct was prohibited by the

8    FLSA.

9    77.    Defendant has acted neither in good faith nor with reasonable grounds

10    to believe that its actions and omissions were not a violation of the FLSA, and as a

11    result thereof, Plaintiffs and other similarly situated employees are entitled to

12    recover an award of liquidated damages in an amount equal to the amount of

13    unpaid minimum wages, and prejudgment interest at the applicable rate.  29 U.S.C.

14    § 216(b).

15    78.    The foregoing conduct, as alleged, constitutes a willful violation of

16    the FLSA within the meaning of 29 U.S.C. section 255(a).

17    79.    As a result of the aforesaid violations of the FLSA's minimum wage

18    pay provisions, compensation of minimum wages has been unlawfully withheld by

19    Defendant from Plaintiffs and all similarly situated employees.  Accordingly,

20

CLASS AND COLLECTIVE ACTION COMPLAINT - 32

1

Defendant is liable for unpaid wages, together with an amount equal as liquidated

2

damages, attorneys' fees, and costs of this action.

3

### SECOND CAUSE OF ACTION
**Failure to Pay Minimum Wages**
**RCW 49.46.020 and 49.46.090**
**(Washington Class)**

4

5

80.    Plaintiff Freitas hereby realleges and incorporates by reference the

6

allegations set forth above as if fully set forth herein.

7

81.    Employers must pay employees all wages to which they are entitled

8

under the Washington Minimum Wage Act.  RCW 49.46.090.  If the employer

9

fails to do so, the employer must pay the employee the full amount due, less any

10

amount actually paid, and for costs and such reasonable attorney's fees as may be

11

allowed by the court, under RCW 49.46.090.

12

82.    During the applicable statutory period, RCW Section 49.46.020 was

13

in full force and effect and required that the Class members receive the minimum

14

wage for all hours worked at a rate not less than the following; $9.47 per hour for

15

all hours worked in 2015 and 2016; $11 per hour for all hours worked in 2017;

16

$11.50 per hour for all hours worked in 2018; and $12 per hour for all hours

17

worked in 2019.

18

83.    The Drivers are not paid at all—much less at the statutory minimum

19

wage—for the extensive time they spend confined to the truck's cramped "sleeper

20

berth" even though they are authorized or required by the employer to be on duty

on the employer's premises or at a prescribed workplace. This time is compensable as a matter of law.

84.     Defendant's unlawful compensation scheme has denied Plaintiff Freitas and the Washington Class the minimum wages to which they are entitled under the law.  As explained above, Plaintiff and members of the Washington Class frequently have worked time for which they are not compensated even at the statutory minimum wage, as determined by the RCW.

85.     As a direct and proximate result of the unlawful acts and omissions of Defendant, Plaintiff Freitas and members of the Washington Class have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount plus attorneys' fees and costs of suit under 49.46.090 and 49.48.030.

### THIRD CAUSE OF ACTION
**Failure to Provide Meal and Rest Breaks and Ensure Those Breaks Are Taken**
**RCW 49.12.020 and WAC 296-126-092**
**(Washington Class)**

86.     Plaintiff Freitas hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

87.     RCW 49.12.020 and WAC 296-126-092 require Defendant to provide meal and rest periods to Plaintiff Freitas and members of the proposed Washington Class and ensure those meal and rest periods are taken.  WAC 296-126-092(1)

CLASS AND COLLECTIVE ACTION COMPLAINT - 34

specifically provides that "Employees shall be allowed a meal period of at least

thirty minutes which commences no less than two hours nor more than five hours

from the beginning of the shift. Meal periods shall be on the employer's time when

the employee is required by the employer to remain on duty on the premises or at a

prescribed work site in the interest of the employer."

88.    WAC 296-126-092(4) provides:  "Employees shall be allowed a rest

period of not less than ten minutes, on the employer's time, for each four hours of

working time. Rest periods shall be scheduled as near as possible to the midpoint

of the work period. No employee shall be required to work more than three hours

without a rest period."

89.    Defendant has failed to provided Plaintiff Freitas and the other

Washington Class members with the meal and rest periods to which they are

entitled under WAC 296-126-092.  Defendant has also failed to ensure that such

meal and rest periods are taken.

90.    Alternatively, Defendant has not paid Drivers any wages for meal

periods that are on the employer's time by virtue of the employee needing to

remain on duty on the premises or at a prescribed work site (i.e., the sleeper berth

and the immediate vicinity of the truck), nor has Defendant paid wages for any rest

periods that shall be on the employer's time under WAC 296-126-092.

91.    Defendant has failed to perform its obligations to provide Plaintiff Freitas and Washington Class Members with meal periods between the second and fifth hour of work and rest periods for each four hours of working time, to be scheduled as near as possible to the midpoint of the work period.

92.    As a result of these unlawful acts, Plaintiff Freitas and the Washington Class have been deprived of compensation in amounts to be determined at trial, and Plaintiff and the Washington Class are entitled to the recovery of such damages, including interest thereon, and attorneys' fees and costs under RCW 49.48.030.

**FOURTH CAUSE OF ACTION**
**Failure to Pay Wages Owed at Termination**
**RCW 49.48.010 and 49.48.030**
**(Washington Class)**

93.    Plaintiff Freitas hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

94.    RCW 49.48.010 provides that "[w]hen any employee shall cease work for an employer, whether by discharge or by voluntary withdrawal, the wages due him on account of his employment shall be paid to him at the end of the established pay period."

95.    By the actions alleged above, Defendant has violated and continue to violate the provisions of RCW 49.48.010.

96.    As a result of the unlawful acts of Defendant, Plaintiff Freitas and Washington Class members have been deprived of compensation in amounts to be determined at trial. Under RCW 49.48.030, Plaintiff and Washington Class members are entitled to such damages, including interest thereon, as well as attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
**Willful Refusal to Pay Wages**
**RCW 49.52.050 and 49.52.070**
**(Washington Class)**

97.    Plaintiff Freitas hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

98.    RCW 49.52.050(2) provides that any employer or agent of any employer who "[w]ilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract" shall be guilty of a misdemeanor.

99.    RCW 49.52.070 provides that any employer who violates the foregoing statute shall be liable in a civil action for twice the amount of wages withheld by way of exemplary damages, together with costs of suit and reasonable attorneys' fees.

100.   An employer's nonpayment of wages is willful and made with intent "when it is the result of knowing and intentional action and not the result of bona

fide dispute as to the obligation of payment." *Wingert v. Yellow Freight Sys., Inc.*, 146 Wash. 2d 841, 849 (2002) (quoting *Chelan Cnty. Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wash. 2d 282, 300 (1987)).

101.  Defendant willfully failed to pay all wages owed to Plaintiff Freitas and each member of the proposed Washington Class, including minimum wages for time spent during non-compliant meal and rest periods, time logged as "sleeper berth" while required to remain on duty on the employer's premises, and time spent performing work tasks completed during on duty, non-drive times. Defendant knew or should have known that its employment policies violated Washington law, and its failure to pay wages owed to Plaintiff and the Washington Class was "willful" under RCW 49.52.050(2).

102.  Because Defendant's failure to pay wages owed was "willful," Plaintiff Freitas and the Washington Class are entitled to exemplary damages under RCW 49.52.070.

## SIXTH CAUSE OF ACTION
### Unfair or Deceptive Acts
### RCW 19.86.20 and 19.86.090
### (Washington Class)

103.  Plaintiff Freitas hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

104.  Defendant engaged in unfair or deceptive acts or practices when it: (1) failed to pay Plaintiff and the Washington Class members wages for time logged as

CLASS AND COLLECTIVE ACTION COMPLAINT - 38

"sleeper berth" and for any time not logged as "driving" during which Drivers were on duty; (ii) failed to provide Plaintiff and the Washington Class with compliant meal and rest breaks; (iii) failed to pay Plaintiff and the Washington Class for the periods during which their breaks were interrupted; (iv) failed to pay Plaintiff and the Washington Class minimum wage; (v) violated RCW 49.46.030; and (vii) violated WAC 296-126-092.

105.    Defendant's unfair or deceptive acts or practices repeatedly occurred in Defendant's business, injured Plaintiff and the Washington Class, and impacted the public interest because they injured other persons and had and have the capacity to injure other persons.

106.    As a result of Defendant's unfair and deceptive practices, Plaintiff and the Washington Class are entitled under RCW 19.86.090 to recover treble damages, reasonable attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**
**Failure to Pay for All Hours Worked in Violation of**
**California Labor Code §§ 201, 202, 204, and 221-223**
**(California Class)**

107.    Plaintiff Calvert realleges and incorporate by reference the above paragraphs as though fully set forth below.

108.    California Labor Code Section 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method

CLASS AND COLLECTIVE ACTION COMPLAINT - 39

1    of calculation."

2    109.   California Labor Code Sections 201 and 202 require an employer to

3    pay all wages earned but unpaid immediately upon the involuntary discharge of an

4    employee or within seventy-two hours of an employee's voluntary termination of

5    employment.

6    110.   California Labor Code Section 204 provides that employers must

7    compensate employees for all hours worked "twice during each calendar month, on

8    days designated in advance by the employer as the regular paydays."

9    111.   California Labor Code Sections 221-223 prohibit employers from

10   withholding and deducting wages, or otherwise artificially lowering the wage scale

11   of an employee.

12   112.   As explained above, Defendant has maintained and continues to

13   maintain a policy of denying the Drivers any compensation for time in the truck's

14   cramped "sleeper berth" and the immediate vicinity theroef, even though the

15   California Class members—including Plaintiff Calvert—have been under

16   Defendant's control while waiting in the truck's sleeper berth for Defendant's

17   benefit.

18   113.   Defendant's unlawful compensation scheme has denied Plaintiff

19   Calvert and the California Class the straight time wages to which they are entitled

20   under the law. As explained above, Plaintiff Calvert and members of the California

1  Class frequently have worked time for which they are not compensated at their

2  regular rates of pay, as determined by the Industrial Welfare Commission.

3        114.    Accordingly, Defendant has artificially reduced the pay rates of

4  Plaintiff Calvert and members of the California Class by denying them

5  compensation for time spent under Defendant's control while in the sleeper berth

6  and in the immediate vicinity thereof, primarily for Defendant's benefit.

7        115.    As a proximate result of these violations, Defendant has damaged

8  Plaintiff Calvert and the California Class in amounts to be determined according to

9  proof at trial.

10        116.    Under California Labor Code Section 218.6 and Civil Code Section

11  3287(a), Plaintiff Calvert and other members of the California Class are entitled to

12  recover pre-judgment interest on wages earned but not timely paid.

13        117.    Plaintiff Calvert, on behalf of himself and the California Class, seeks

14  all unpaid compensation, damages, penalties, interest and attorneys' fees and costs,

15  recoverable under applicable law set forth below.

16  **EIGHTH CAUSE OF ACTION**

17  **Failure to Pay Minimum Wages**
**California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and**
**1197.1; IWC Wage Order No. 9**

18  **(California Class)**

19        118.    Plaintiff Calvert hereby realleges and incorporates by reference the

20  allegations set forth above as though fully set forth herein.

CLASS AND COLLECTIVE ACTION COMPLAINT - 41

1    119.   During the applicable statutory period, California Labor Code

2    Sections 1182.11, 1182.12 and 1197as well as the Minimum Wage Order were in

3    full force and effect and required that the Class members receive the minimum

4    wage for all hours worked at a rate not less than $10.00 per hour from January 1,

5    2016 to December 31, 2016; at a rate not less than $10.50 per hour from January 1,

6    2017 to December 31, 2017; at a rate not less than $11.00 per hour from January 1,

7    2018 to December 31, 2018; and at a rate not less than $12.00 per hour

8    commencing on January 1, 2019.

9    120.   The Drivers are not paid at all—much less at the statutory minimum

10   wage—for the extensive time they spend confined to the truck's cramped "sleeper

11   berth" even though they are under Defendant's control and cannot effectively use

12   the time for their own benefit.  This time is compensable as a matter of law.

13   121.   Defendant's unlawful compensation scheme has denied Plaintiff

14   Calvert and the California Class the minimum wages to which they are entitled

15   under the law.  As explained above, Plaintiff and members of the California Class

16   routinely have been subject to Defendant's control without pay and performed

17   work for which they are not compensated even at the statutory minimum wage, as

18   determined by the IWC.

19   122.   California Labor Code Section 1194.2 provides that, in any action

20   under Section 1194 to recover wages because of the payment of a wage less than

CLASS AND COLLECTIVE ACTION COMPLAINT - 42

minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

123.   Under California Labor Code Section 218.6 and Civil Code Section 3287(a), Plaintiff Calvert and other members of the California Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

124.   As a direct and proximate result of the unlawful acts and omissions of Defendant, Plaintiff Calvert and members of the California Class have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit under California Labor Code Sections 1194, 1194.2 and 1197.1.

**NINTH CAUSE OF ACTION**
**Failure to Provide Meal Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and 512; and Cal.Code Regs.,**
**Title 8 § 11090 ¶¶ 7 & 11**
**(California Class)**

125.   Plaintiff Calvert hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

126.   California Labor Code Sections 226.7 and 512, and Title 8 of the California Code of Regulations Section 11090, Paragraph 11 requires Defendant to provide meal periods to Plaintiff Calvert and members of the proposed California

CLASS AND COLLECTIVE ACTION COMPLAINT - 43

1   Class.  California Labor Code Sections 226.7 and 512, and Title 8 of the California

2   Code of Regulations Section 11090, Paragraph 11 prohibit employers from

3   employing an employee for more than five hours without a meal period no less

4   than thirty minutes and for more than ten hours without a second meal period.

5   Unless the employee is relieved of all duty during the thirty-minute meal period,

6   the employee is considered "on-duty" and the meal or rest period is counted as

7   time worked.

8        127.   Defendant has not provided Plaintiff Calvert and the other California

9   Class members with meal periods during which they are completely relieved of

10  duty for at least thirty minutes by the fifth hour of work and again by the tenth hour

11  of work.  Plaintiff and other Class members are without any meal period during the

12  time they are confined to the sleeper berth for ten or more hours at a time.

13       128.   Defendant has failed to perform its obligations to provide Plaintiff

14  Calvert and California Class members off-duty meal periods by the end of the fifth

15  hour of work and a second meal period by the end of the tenth hour of work.

16       129.   Defendant also has failed to pay Plaintiff Calvert and California Class

17  members one hour of pay for each off-duty meal period that they have been denied.

18  Defendant's conduct described herein violates California Labor Code Sections

19  226.7 and 512 and Title 8 of the California Code of Regulations Section 11090.

20

130.   Under California Labor Code Section 218.6 or Civil Code Section 3287(a), Plaintiff Calvert and other members of the California Class are entitled to recover pre-judgment interest on wages earned, but not paid every pay period.

131.   Therefore, Plaintiff Calvert and members of the California Class are entitled to compensation for Defendant's failure to provide meal periods, plus interest, expenses, and costs of suit under California Labor Code Sections 226.7(b) and Title 8 of the California Code of Regulations Section 11090.

**TENTH CAUSE OF ACTION**
**Failure to Provide Rest Periods, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and Cal.Code Regs., Title 8 § 11090 ¶ 12**
**(California Class)**

132.   Plaintiff Calvert hereby realleges and incorporates by reference the paragraphs above as though fully set forth herein.

133.   California Labor Code Section 226.7 and Title 8 of the California Code of Regulations Section 11090, Paragraph 12 requires Defendant to authorize and permit paid, off-duty rest periods to Plaintiff Calvert and members of the California Class at the rate of ten minutes net rest time per four hours or major fraction thereof.

134.   Defendant does nothing to authorize and permit rest periods that comply with the California Labor Code and the Wage Order.  Defendant's only policy as to breaks of any kind is to have Drivers comply with the DOT

CLASS AND COLLECTIVE ACTION COMPLAINT - 45

1  regulations, which do not provide for breaks, aside from the 30-minutes of non-
2  driving time after 8 hours of driving.

3      135.   Even if Drivers manage to take some kind of "break" from time to
4  time, these "breaks" are not duty free or free from the possibility of interruption.
5  Nor are they paid.  The Drivers are required to, and subject to being required to
6  perform non-driving tasks during such time.

7      136.   Under both California Labor Code Section 226.7 and Title 8 of the
8  California Code of Regulations Section 11090, Paragraph 12, an employer must
9  pay an employee who was denied a required rest period one hour of pay at the
10  employee's regular rate of compensation for each workday that the employer did
11  not provide the compliant, paid and off-duty rest period.

12      137.   At all relevant times herein, Defendant has failed to perform its
13  obligations to authorize and permit Plaintiff Calvert and California Class members
14  to take rest periods as set forth above.

15      138.   Under California Labor Code Section 218.6 or Civil Code Section
16  3287(a), Plaintiff Calvert and other members of the California Class are entitled to
17  recover pre-judgment interest on wages earned, but not paid every pay period.

18      139.   Therefore, Plaintiff Calvert and members of the California Class are
19  entitled to compensation for Defendant's failure to authorize and permit rest
20

periods, plus interest, and costs of suit under California Labor Code Section 226.7(b), and Title 8 of the California Code of Regulations Section 11090.

## ELEVENTH CAUSE OF ACTION
### Failure to Keep Accurate Payroll Records
### California Labor Code §§ 1174 & 1174.5
### (California Class)

140.   Plaintiff Calvert hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

141.   California Labor Code Section 1174 requires Defendant to maintain payroll records showing the actual hours worked daily by Plaintiff Calvert and the California Class members.

142.   Defendant knowingly, intentionally, and willfully has failed to maintain payroll records showing the actual hours worked by Plaintiff Calvert and the California Class members as required by California Labor Code Section 1174 and in violation of Section 1174.5.  As a direct result of Defendant's failure to maintain payroll records, Plaintiff and the California Class members have suffered actual economic harm as they have been precluded from accurately monitoring the number of hours they have worked and thus seeking all accrued minimum wages and agreed-upon wages.  As a direct and proximate result of the unlawful acts and omissions of Defendant, Plaintiff and the California Class members are entitled to recover damages and civil penalties in an amount to be determined at trial, plus interest, attorneys' fees, and costs of suit.

CLASS AND COLLECTIVE ACTION COMPLAINT - 47

1

2

## TWELFTH CAUSE OF ACTION
### Failure to Furnish Accurate Wage Statements
### California Labor Code § 226
### (California Class)

3

4

143.    Plaintiff Calvert hereby realleges and incorporates by reference the

paragraphs above as though fully set forth herein.

5

6

144.    California Labor Code Section 226(a) provides that every employer

7

must furnish each employee with an accurate itemized wage statement, in writing,

8

showing nine pieces of information, including: 1) gross wages earned; 2) total

9

hours worked by the employee; 3) the number of piece-rate units earned and any

10

applicable piece rate if the employee is paid on a piece rate basis; 4) all deductions,

11

provided that all deductions made on written orders of the employee may be

12

aggregated and shown as one item; 5) net wages earned; 6) the inclusive dates of

13

the period for which the employee is paid; 7) the name of the employee and the last

14

four digits of his or her social security number or an employee identification

15

number other than a social security number; 8) the name and address of the legal

16

entity that is the employer; and 9) all applicable hourly rates in effect during the

17

pay period and the corresponding number of hours worked at each hourly rate by

the employee.

18

19

145.    California Labor Code Section 226(e)(1) provides that an employee

20

suffering an injury as a result of a knowing and intentional failure to provide a

statement accurately itemizing the information set forth in Labor Code Section

226(a), then the employee is entitled to recover the greater of all actual damages or fifty-dollars ($50.00) for the initial violation and one-hundred dollars ($100.00) for each subsequent violation, up to a maximum of four-thousand dollars ($4,000.00).

146.   California Labor Code Section 226(e)(2) provides that an employee is deemed to suffer injury if the employer fails to provide wages statements that show, among other items, the amount of the gross wages or net wages paid to the employee during the pay period, the total hours worked by the employee during the pay period, all deductions, and all applicable hourly rates in effect during the pay period. The wage statements of Plaintiff Calvert and the California Class members do not comply with these requirements, including because they do not show the accurate amount of gross or net wages and deductions, and do not show all applicable hourly rates.  Accordingly, Plaintiff and the Class members have suffered injury as a result of Defendant's violations of Labor Code Section 226.

147.   Defendant's intentionally and willfully failed to furnish Plaintiff Calvert and California Class members with timely, accurate, itemized statements showing total hours worked, gross wages earned, net wages earned, and the applicable hourly rates as required by California Labor Code Section 226(a).

148.   Plaintiff Calvert and the California Class members have been injured by Defendant's violation of California Labor Code Section 226(a) because they have been denied their legal right to receive and their protected interest in

receiving, accurate, itemized wage statements, and could not promptly and easily

ascertain from the wage statement alone their total hours worked, gross wages

earned, net wages earned, and the applicable hourly rates, among other required

information.

149.    Plaintiff Calvert and California Class Members have also been injured

as a result of having to bring this action to obtain correct wage information

following Defendant's refusal to comply with many requirements of the California

Labor Code.  As a result, Defendant is liable to Plaintiff and California Class

members, for the amounts, penalties, attorneys' fees, and costs of suit provided by

California Labor Code Section 226(e).

150.    Under California Labor Code Section 218.6 and Civil Code Section

3287(a), Plaintiff Calvert and other members of the California Class are entitled to

recover pre-judgment interest on wages earned, but not paid every pay period.

151.    Plaintiff Calvert, on behalf of himself and the proposed California

Class, request an assessment of penalties as stated herein and other relief as

described below.

152.    Plaintiff Calvert, on behalf of himself and the proposed California

Class, seek all unpaid compensation, damages, penalties, interest and attorneys'

fees and costs, recoverable under applicable law set forth below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## THIRTEENTH CAUSE OF ACTION
### Waiting Time Penalties
### California Labor Code §§ 201-203
### (California Class)

153.   Plaintiff Calvert hereby realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

154.   California Labor Code Section 201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge.  California Labor Code Section 202 requires an employer to promptly pay compensation due and owing to said employee within seventy-two hours of that employee's termination of employment by resignation. Labor Code Section 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under Labor Code Sections 201-202, then the employer is liable for waiting time penalties in the form of continued compensation for up to thirty workdays.

155.   Plaintiff Calvert and members of the California Class have left their employment with Defendant during the statutory period.  Defendant willfully failed and refused, and continue to willfully fail and refuse, to timely pay minimum wages, overtime compensation and sums wrongfully deducted from compensation to Plaintiff and to all other California Class members whose employment with Defendant has ended or been terminated at any point during the statutory period. As a result, Defendant is liable to Plaintiff and other formerly employed members

of the proposed California Class for waiting time penalties, together with interest

thereon, attorneys' fees, and costs of suit, under California Labor Code Section

203.

156.    Plaintiff Calvert, on behalf of the proposed California Class, request

waiting time penalties under California Labor Code Section 203 and as described

below.

### FOURTEENTH CAUSE OF ACTION
**Unfair Competition and Unlawful Business Practices**
**California Business and Professions Code §§ 17200, et seq.**
**(California Class)**

157.    Plaintiff Calvert hereby realleges and incorporates by reference the

allegations set forth above as if fully set forth herein.

158.    California Business and Professions Code Section 17200 defines

unfair competition to include, "unlawful, unfair or fraudulent business practices."

159.    Plaintiff Calvert and all proposed members of the California Class are

"persons" within the meaning of California Business and Professions Code Section

17204, who have suffered injury in fact and have lost money or property as a result

of Defendant's unfair competition.

160.    Defendant has been committing, and continue to commit, acts of

unfair competition by engaging in the unlawful and unfair business practices and

acts described in this Complaint, including, but not limited to:

CLASS AND COLLECTIVE ACTION COMPLAINT - 52

      i.      violations of California Labor Code Sections 1197, 1197.1, 1198;

      ii.      violations of Labor Code Sections 510;

      iii.      violations of Labor Code Sections 226.7 and 512;

      iv.      violations of California Code Regulations, Title 8, Section 11090, Paragraphs 7, 11, and 12;

      v.      violations of Labor Code Sections 204, 221-223 and 400-410;

      vi.      violations of Labor Code Sections 1174 and 1174.5;

      vii.      violations of Labor Code Section 226; and

      viii.      violations of Labor Code Sections 201-202.

161.  Plaintiff Calvert reserves the right to identify additional unfair and unlawful practices by Defendant as further investigation and discovery warrants.

162.  As a result of its unlawful and unfair acts, Defendant has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiff Calvert and California Class members.  Defendant's unlawful and unfair conduct has also enabled Defendant to gain an unfair competitive advantage over law-abiding employers and competitors.  Defendant must be enjoined from this activity and made to restore to Plaintiff and California Class members their wrongfully withheld wages, interest thereon, and related statutory penalties, under Business and Professions Code Sections 17202 and 17203.

CLASS AND COLLECTIVE ACTION COMPLAINT - 53

163.    Business and Professions Code Section 17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices.

164.    Plaintiff Calvert seeks a court order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to himself and members of the California Class, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

165.    Plaintiff Calvert, on behalf of himself and the California Class, request restitution of unpaid wages, wage premiums, and other relief as described below.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed FLSA Collective, Washington Class, and California Class they seek to represent in this action, requests the following relief:

A.    An order certifying that the First Count of this Complaint may be maintained as a collective action under 29 U.S.C. Section 216(b) and that prompt notice of this action be issued to potential members of the opt-in FLSA Collective,

1    apprising them of the pendency of this action, and permitting them to assert timely

2    FLSA claims;

3        B.      An order certifying that the Second through Sixth Counts of this

4    Complaint be maintained as a class action under Federal Rule of Civil Procedure

5    23 on behalf of a class of Defendant's over-the-road truck Drivers employed in the

6    state of Washington within the last three years and that notice of the pendency of

7    this action be provided to members of the proposed Washington Class;

8        C.      An order certifying that the Seventh through Fourteenth Counts of this

9    Complaint be maintained as a class action under Federal Rule of Civil Procedure

10   23 on behalf of a class of Defendant's over-the-road truck Drivers employed in the

11   state of California within the last four years and that notice of the pendency of this

12   action be provided to members of the proposed California Class;

13       D.      An order designating Plaintiff Ryan Calvert as class representative for

14   the California state law claims, and Gregg Freitas as class representative for the

15   Washington state law claims; and Plaintiffs' attorneys as Counsel for the FLSA

16   Collective, California Class, and Washington Class;

17       E.      An order awarding Plaintiffs, the FLSA Collective, the California

18   Class, and the Washington Class compensatory and statutory damages, including

19   liquidated damages on the FLSA claim, lost wages, earnings, and other employee

20   benefits and all other sums of money owed to Plaintiffs and members of the FLSA

1    Collective, California Class, and Washington Class together with interest on these

2    amounts;

3        F.    An order directing Defendant to identify, locate and restore to all

4    current and former employees the restitution they are due for lost wages, earnings,

5    and other employee benefits and all other sums of money, together with interest on

6    these amounts;

7        G.    That the Court find Defendant has violated the FLSA, California

8    Labor Laws, Washington Labor Laws, and public policy as alleged herein;

9        H.    That the Court find that Defendant has been in violation of applicable

10   provisions of the California Labor Code and IWC Wage Order No. 9 by failing to

11   pay each member of the proposed Class for all hours worked, including minimum

12   wages and wages at the designated rate;

13       I.    That the Court find that Defendant has been in violation of applicable

14   provisions of the RCW Section 49.46.020 by failing to pay each member of the

15   proposed Class for all hours worked, including minimum wages and wages at the

16   designated rate;

17       J.    That the Court find that Defendant has been in violation of California

18   Labor Code Sections 226.7 and 512 by failing to provide Plaintiff and members of

19   the Class with meal periods and therefore owe compensation under California

20

1    Labor Code Section 226.7(b) with respect to violations of California Code of

2    Regulations, Title 8, Section 11090, Paragraphs 7 and 11;

3         K.    That the Court find that Defendant has been in violation the RCW

4    Section 49.12.020 and WAC Section 296-126-092 by failing to provide Plaintiff

5    and each member of the proposed Class with meal periods and therefore owe

6    Plaintiffs compensation;

7         L.    That the Court find that Defendant has been in violation of California

8    Labor Code Section 226.7 by failing to authorize and permit rest periods for

9    Plaintiff and each member of the proposed Class, and therefore owe compensation

10   under California Labor Code Section 226.7(b) with respect to violations of

11   California Code of Regulations, Title 8, Section 11090, Paragraph 12;

12        M.    That the Court find that Defendant has been in violation of the RCW

13   Section 49.12.020 and the WAC Section 296-126-092 by failing to authorize and

14   permit rest periods for Plaintiff and each member of the proposed Class, and

15   therefore owe Plaintiffs compensation.

16        N.    That the Court find that Defendant has violated the recordkeeping

17   provisions of California Labor Code Sections 1174 and 1174.5 as to Plaintiff and

18   each member of the proposed Class;

19        O.    That the Court find that Defendant has been in violation of California

20   Labor Code Section 226 by failing to timely furnish Plaintiff and each member of

1    the proposed Class with itemized statements accurately showing the total hours

2    worked and wages earned by each of them during each pay period;

3        P.    That the Court find that Defendant has been in violation of California

4    Labor Code Sections 201 and 202 and therefore owe waiting time penalties under

5    California Labor Code Section 203 for willful failure to pay all compensation

6    owed at the time of termination of employment to Plaintiff and each member of the

7    proposed Class;

8        Q.    That the Court find that Defendant has been in violation of the RCW

9    Sections 49.48.010 and 49.52.70 and therefore owe waiting time penalties for

10   willful failure to pay all compensation owed at the end of the established pay

11   period to Plaintiff and each member of the proposed Class who has voluntary

12   withdrawn from employment with Defendant or been discharged;

13       R.    That the Court find that Defendant has committed unfair and unlawful

14   business practices, in violation of California Business and Professions Code

15   Section 17200, *et seq.*, by its violations of the California Labor Code and Wage

16   Orders as described above;

17       S.    That the Court order an accounting of the payroll records or driver

18   logs to determine what restitution is owed and to whom, pursuant to California

19   Business and Professions Code Section 17203;

20

1    T.    An order awarding Plaintiff and each member of the proposed Class

2    treble damages as provided by the Washington Consumer Protection Act RCW

3    19.86;

4    U.    That the Court award to Plaintiff and each member of the proposed

5    Class compensation and restitution for all wages owed, including minimum wages,

6    wages at the designated rate, for the value of all meal and rest periods that were not

7    provided or authorized by Defendant, and for all reasonable and necessary business

8    expenses incurred by Drivers;

9    V.    Prejudgment interest under California Labor Code Section 218.6;

10    California Civil Code Sections 3287, 3289, and other applicable law;

11    W.    That the Court award to Plaintiff and each member of the proposed

12    Class statutory or civil penalties as provided herein, including but not limited to

13    California Labor Code Sections 203, 210, 226, and California Business and

14    Professions Code Section 17202;

15    X.    That Plaintiff and the Class be awarded reasonable attorneys' fees and

16    costs under California Labor Code Sections 203, 225.5, 226, 1194, 1197, Code of

17    Civil Procedure Section 1021.5, or other applicable law;

18    Y.    Any and all other applicable statutory penalties, as provided by law;

19    and

20    Z.    For such other and further relief as this Court deems just and proper.

CLASS AND COLLECTIVE ACTION COMPLAINT - 59

# VIII.  JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 5th day of November, 2019.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Toby J. Marshall, WSBA #32726
    Toby J. Marshall, WSBA #32726

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Erika L. Nusser, WSBA #40854
    Erika L. Nusser, WSBA #40854

Attorneys for Plaintiffs and the Class
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Email: tmarshall@terrellmarshall.com
Email: enusser@terrellmarshall.com

Joshua Konecky, *Pro Hac Vice Forthcoming*
Leslie Joyner, *Pro Hac Vice Forthcoming*
Nathan Piller, *Pro Hac Vice Forthcoming*
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
Email: jkonecky@schneiderwallace.com
Email: ljoyner@schneiderwallace.com
Email: npiller@schneiderwallace.com